Your Honor, thank you. It's Richard Rubin again on behalf of the petitioners. In your order that you issued last week, you asked us to address the mootness question, so I want to start with that. And I understand why that's an issue. The complaint in this case sought declaratory relief about arbitration and about under their Chapter 40 defect notices, do we have the right to do inspections before they can file suit. The second claim in our complaint seeks a declaration about our Chapter 40 inspection rights. And the fourth claim seeks an injunction to preclude the filing of a complaint until they comply with Chapter 40. The district court, as we know, granted our motion to compel arbitration as to the original homeowners, and I think it is fair that the district court intended that any of our declaratory issues as to those homeowners be decided by the arbitrator. The district court, as we know, denied the motion, or it wasn't a motion, but denied the right to compel arbitration as to subsequent homeowners. Although the district court's July 2012 order says that we've obtained all the relief that we're entitled to, in fact, we haven't. Because those two declarations that I mentioned in the second and fourth claims have never been decided. The court has certainly said what it intends to do, but it hasn't done it. There's no order on those two claims. There's no judgment on those two claims. So although I think we know what the district court will do and deny our Chapter 40 pre-inspection rights, we believe erroneously, but I think that's clear it hasn't happened. So I understand that this court may conclude that the question isn't right to be decided now. The writ is moot and wait for an appeal once the district court acts. And you can do that, and there's only so much I can say, but that really would be a waste of judicial resources. This is fully briefed and is in front of you now. It's a very important issue. And the Nevada Supreme Court said in the West Park case, quote, Interpretations of Chapter 40 is a matter of great importance for thousands of homeowners throughout Nevada, end of quote. It's a matter of great importance to developers as well. There are a number of other cases in various stages where this issue is important. So we believe that it is in the best interest of all litigants and all parties to have this matter decided now, as opposed to waiting for the district court to enter an order, waiting for us to file a notice of appeal, and for that matter to come back to you. I'd like to talk about the actual issue in the petition, if I may, unless you have questions on mootness. The issue really is, is the district court correct that there's an exception to our Chapter 40 pre-inspection rights when a representative Chapter 40 notice has been served? And the district court ruled that there is because it is, quote, Impractical and, quote, Inequitable for there to be inspections of each home. On the Homeowners Association's motion for reconsideration, the district court ordered inspection of 10% of the homes, but during the pendency of the case at some unknown time. The legislature created no exception, no exception for defect notices provided by Homeowners Associations with respect to Chapter 40 rights. And in fact, the legislature did it to the opposite. Under NRS 40.600, there are two alternative ways that the association can provide inspection, I'm sorry, defect notices to a developer. They have two choices. If they provide a notice under subsection four, the builder is then allowed to provide a copy of the notice to every homeowner it chooses, all of them if it wants. The homeowners then must allow an inspection to occur, each individual homeowner, and if any homeowner refuses, then that homeowner cannot proceed with a defect claim. It is clear had they chosen that alternative, we would have the right to inspect every house. The association didn't choose that alternative, and it's probably understandable why, because then we're communicating directly with the homeowners, with their members, and that's fair. Subsection five is the other alternative. Under that alternative, and this is what they did, the Homeowners Association gives a notice to the builder, and the builder can respond back to the association seeking the right to inspect homes. That's what we did. The Homeowners Association argues, and the district court found, that if we use the procedure under subsection five, we get no inspections, even though it's clear under subsection four we can inspect any or every house. No inspection or inspection of some representative sampling? The court said no inspections. I'm talking pre-litigation, before the filing. That's what this is about, because the Supreme Court in Nevada stated in the first slide one decision that there's three major things that Chapter 40 is clear about. One, it's clear from the legislative history that the legislature intended to preserve an opportunity for builders to repair. Two, failure to comply with Chapter 40 pre-litigation procedures before filing suit requires dismissal. And three, the builders are entitled to a reasonable opportunity, a reasonable notice of the alleged defect and the right to inspect. So we're not talking about discovery inspections. We're not talking about inspections to try to defeat class certification or prepare for trial. We're talking about the right to inspect before they file suit. Chapter 40 says if they do not allow that inspection, the action shall be dismissed. It's dismissed without prejudice. If there's a statute of limitation problem, it can be stayed, but it shall be dismissed. And what the district court did is it imposed its own notion of equity in place of the legislature's. The legislature could have written the statute to provide for reasonable sampling, but it didn't. The legislature did provide for reasonable sampling with a defect notice, that a homeowner's association can provide a defect notice with an expert report and what they call a reasonable reliable sample. It says that expressly in the statute. But the following sections that talk about what happens after the notice don't talk about representative samples. They talk about the right to inspect. And as I said, under subsection 4, there's no question we have the right. And there's no exception under subsection 5. Now, I know this is not directly the focus of your argument at the moment, but I'm having trouble understanding the relationship between this pre-litigation inspection right and arbitration. Now, does that mean pre-arbitration as well as pre-litigation? How does that fit in? I believe so. You believe what? I believe it does require before arbitration. But it's our position. So how come you then sought arbitration? Because you haven't had your inspection yet. Good point. But I think this is my position, our position. I think that issue in the arbitration is for the arbitrators to decide. In other words, the arbitrator would have to decide what is the situation regarding pre-arbitration inspections under Chapter 40. I think that's what Judge Jones intended, although he didn't clearly say that. I don't quarrel with that because I think he basically put it all to the arbitrator. If you don't think that happened, then I'm right. Then you're right. I don't think you can compel arbitration either. I think you have to rule that they have not allowed the Chapter 40 inspections pre-litigation, pre-arbitration, and everything has to be dismissed. I will say this. Although the court ordered the matter to arbitration, the homeowners haven't commenced an arbitration. So right now there is no arbitration pending. They have the right to do that. Obviously, under the court order, it hasn't happened. So I don't think that exact problem exists. What has happened? Go ahead, Justice Sotomayor. Why doesn't your theory that you just discussed then apply here on this issue on which you're trying to get rid of mandamus? Why shouldn't that be decided by the arbitrator? Because for subsequent homeowners, it hasn't been ordered to arbitration. If you – if I'm following your question, if you would rule today that subsequent That's the same thing, I agree. Wait a minute. Are you saying this mandamus petition applies only to subsequent homeowners? That's right. That's what we believe. And for this reason, the court granted our motion as to original homeowners and sent it to arbitration and ruled all the issues have been resolved. I think once you – once the court sent it to arbitration, I think then the issues or other issues go to the arbiter. As to subsequent homeowners, these issues haven't been resolved. And there is no ruling. There is no arbitration. They're still pending in the district court. That's what I think the difference is. But again, if you – So let me make sure I understand this. So your mandamus is premised upon your losing the issue with respect to the arbitration for subsequent homeowners, even as you're appealing that very issue? It is. And, listen, I understand the procedural morass here. And you're right. There is some relationship between the two aspects. Well, it sounds like there's a very close relationship. And if you were to win your argument with respect to arbitration as the subsequent homeowners, win it even, for example, as, well, we send it back to give you an opportunity to present what you think you should have been able to but couldn't, mandamus sounds like it's pretty premature because we don't even know if the premise for your mandamus exists. I would agree with that. I would agree with that. I think what you're saying, Judge Fletcher, is that it's sort of a step-by-step progression. What I'm saying is I'm totally baffled. I don't understand either. If this applies only to the subsequent owners, right, which Judge Jones threw out, right? No. He said there is no arbitration right as to subsequent homeowners, as we talked about before. But he didn't rule on the other two declarations we're seeking, the right to compel inspection and the injunction to prohibit the filing of the litigation until inspections happen. All right. So let me just speak hypothetically now. So if, for instance, Judge Jones is ruling that you're out of court and the subsequent homeowners holds up, all right, then what? You intend to proceed against them in the district court, the subsequent homeowners? Instead of in arbitration? No. He has ordered an arbitration as the original homeowners on a defect claim. It's not for us to bring. It's for them to bring. They haven't done that. If you rule that the subsequent homeowners are ordered to arbitration, it would be the same thing. No, no, no. If they're not ordered to arbitration. Then if they're not, then we presume that the district court is going to issue an order at some point following what it said it was going to do, which is that you're not entitled to pre-litigation Chapter 40 inspections. No, no. But it means the district court is going to hear those claims on the merits, the subsequent homeowners claims. I don't think so. Who are represented by the association, too. They are. I don't think the court's going to hear it on the merits because I think the court's already told us what the result is going to be. But a mechanism hasn't happened. There hasn't been a motion or an order on that issue. So we haven't formally gotten the result, although practically I think we have. So let me make sure I understand because now you've gotten me confused. I thought I had an understanding of the overall issues. You're agreeing that dismissal after this lawsuit or after this appeal was brought here, the counterclaims were dismissed. So you agree that it renders the writ moot in that sense. But now you're trying through the appeal on the writ issue to preempt what you think the district court is going to do with regard to the remaining claims as it applies to subsequent purchasers. Am I understanding that correctly? At least as a procedural posture of what you're asking and how you're presenting the issues. I think that's close. Look, I recognize that there is a mootness issue. How close? Is that what you're trying to do here? It's hard to say how close. Look, I recognize that there's a mootness issue, and I tried to address that and said what our position is. And I recognize that this court can say it is moot, come back when there's an order and if you choose to appeal. I understand that. Or maybe so premature as to not even become close to live and therefore not yet moot. But I think it is live for this reason. Those claims still exist. But premature, meaning I'm coming back to what Judge Wynn just said. As I understand it now, the only relevance to the mandamus is as to the subsequent homeowners. We don't have an order to which you're objecting. You have a suspicion as to what the district judge is going to do, and you don't like that, and you're trying to tell us what to do before he's done it. Is that right? That is pretty close. And that basically. Just about sums it up. But let me ask you this. As to the remaining claims that the district court hasn't yet ruled on, what is the procedural posture of the case in the court below? You mentioned that the homeowners haven't gone to arbitration. Has anything happened that we should be aware of? No. As we talked about during the appeal, after these orders were issued and then the motions for reconsideration in January of 2013 this year, nothing's happened. I'm sorry, with one exception. The court then, which brings the mootness issue up, the court then dismissed, on our motion to dismiss, the counterclaims of the association, the defect claims, not substantively, but on the procedural basis that it was claim splitting. And so that the claims should be brought in a different action because there's a lot of actions brought by the same lawyers over the same issues. So the judge issued that order to the district judge in April or May of 2013 on claim splitting. That's the only thing that's happened in this case, basically, since January. So as a procedural matter, now you've been sent out to arbitration with regard to original purchasers. Yes. And so if that decision by the district court stands and we certify the question as to covenants running with the land as the subsequent purchasers to the Nevada Supreme Court, assuming that we elect that option, then one option for the district court would be just to stay the remaining litigation until that question is answered, and then the parties will then proceed to arbitration as to the original purchasers? I think that is an option. I agree with that. Okay. Why don't we have them on the other side? You've gone over, but we'll give you a minute to respond. This note is not relevant to you. Don't worry about it. May I proceed? Hang on just a second. Okay. Hang on a second. This is with respect to the Franklin v. Walker case. We now have been able to locate Ms. Sheets. She's got some sort of a family emergency with a medical thing with her daughter and asked us if we would be willing to reschedule it, which I think under the circumstances we would be willing to do. We will be sitting all week, Monday, Tuesday, and then Thursday, Friday, in this configuration, and any of those days, Tuesday, Thursday, or Friday would work for us. Would any of those days work for you? On Wednesday, we're not sitting together. The panel is configured differently, but Friday would work for you? The clerk will be in contact with you to see about rescheduling, but if you could get back to Ms. Sheets right now just to put her mind at rest, that we'd like to reschedule for Friday if that would work for her. And I think it's worth doing that now just to put her mind at rest, let you go, and the clerk will be in contact with you, but let's aim for Friday. Okay. Thank you. Sure. Okay. Sorry for the interruption. Yeah. Good morning. May it please the Court, my name is Scott Canepa, and along with Mr. Jones, we represent the Respondent Homeowners Association, Fiesta Park Homeowners Association, and the Anthem Highlands Homeowners Association, which taken together have 541 Nevada homeowners within those two associations. The issues presented in this mandamus proceeding have been rendered moot because this Court lost jurisdiction to hear this matter when the district court dismissed the Respondent HOA's counterclaims below. The district court's orders of April 25th, 2013, and May 28th, 2013, and I should note here that when the court directed us to address the issue of whether or not the this mandamus proceeding had been mooted, it directed us only to the May 28th, 2013 order, which, of course, doesn't have an excerpt of the record number associated with here, but is identified in the underlying proceedings as document 189. It's important to note that the dismissal actually first occurred, the dismissal of my client's counterclaims actually first occurred in the April 25th, 2013, which is identified in the document indexed below as document 188. Anyway, the point is, is that the dismissal of those counterclaims gave the Petitioners the relief they requested in these proceedings, and there is nothing more this Court can do to afford the Petitioners further relief. What about Mr. Rubin's statement that, well, district court never entered an order on this? Oh, he entered an order. He clearly entered an order on the dismissal of the counterclaims. And I was going to – I know that the court doesn't have these at your immediate disposal. I'm just reading into the record that on page 5 of 6 of the April 25th order, this was on a cross-defendant's motion to dismiss. It says the court grants the motion the amended third-party complaint is predicated upon Greystone's potential liability on Anthem Highlands or Fiesta Park's counterclaims, but those counterclaims are no longer viable in the present case. And then it goes on to say, and I think this is important, because I think it amplifies on several degrees of magnitude the court's professed concern regarding whether or not this issue was right. The court went on in the April 25th order to say the court has permitted the homeowner plaintiffs in the slaughter-type case to file an amended consolidated complaint in the slaughter case, which is the consolidated class actions wherein the affirmative charging allegations for these defective plumbing components is being handled. The court basically split the two cases and identified lead cases. This Greystone case was to be used for the purposes of adjudicating arbitration issues for developers who claim that they have arbitration rights, whereas the slaughter case was going to be used specifically and only for the purpose of the charging allegations of the various homeowners aggrieved by the high-zinc brass fittings. The court went on to say the separate, is it the slaughter case? Is that? Yes, now called Hartman also. But describe to me again the group of plaintiffs. How are they, how is that group defined? The court entered a procedural order which ultimately caused the dismissal of my client's counterclaims. We have no claims pending before the court as we stand right now and haven't had since April 25th. And the procedural order that he entered was to denominate the slaughter-slash-Hartman lawsuit as the lawsuit in which the plaintiffs would be identified and had contained the charging allegations for defect claims. Right. And the Greystone matter, which this is. Okay, but I want the definition of the plaintiffs in the slaughter case. Who are they? Are they the subsequent homeowners? Those are all homeowners aggrieved in the state of Nevada. And those, so. Including those subject to the arbitration order? Those that would be subject to the arbitration order would not be included in the lawsuit. Well, you see, that's my question. So it's the subsequent homeowners. Correct. Not the original homeowners who are subject to the arbitration order. That is correct. However, Your Honor, and just so we tie this up. The order which the Court discussed and asked us to address, which is the May 28th order, where the Court said as follows. The counterclaims improperly pled in this case have been dismissed because defendants have no lead to plead them, but were specifically ordered to include them in the slaughter case if they wish to maintain them. If they wish to abandon the claims altogether, that is the defendant's decision. So to answer your question directly, our clients are not plaintiffs in the slaughter case because we did not move to amend. They are not plaintiffs in any way, shape, or form in this case. And in fact, they are sitting on the sidelines right now. They are not plaintiffs in any case. That is correct. They are not plaintiffs on the issue of construction defects. The Court retained jurisdiction on the Greystone matter with respect to its rulings on arbitration. However, as opposing counsel correctly pointed out. Wait, wait, wait. What does that mean? Do you mean the order, including the order that says the subsequent homeowner's claims are not subject to arbitration? You mean retain jurisdiction over that? Presumably, yes. That's what the district court indicated, Your Honor, was that the Greystone case would be he would retain jurisdiction for whatever leftovers there had to do with in connection with the arbitration. But to get straight to the point, the circumstances have changed dramatically since the Chapter 40 defect notices were first sent by these HOAs. First of all, the counterclaims have been dismissed. There is no live controversy before this Court. The HOA has not decided whether it's going to arbitrate the claims. As opposing counsel correctly points out, those proceedings have not been initiated by our clients, and frankly, our clients haven't made a decision whether they are going to initiate those proceedings. Our clients have not sought relief by seeking to become plaintiffs in the Slaughter-Hartman case because of other circumstances, chief amongst them, how this Court is going to rule on the arbitration issues. Because, for example, to the extent that you ultimately agree with the petitioners or appellants on the other issue, and you send all of the issues to arbitration, then the homeowners association may have no role to play in this matter. Conversely, if it's your decision ultimately to reverse what the district court did and to say that all of the homeowners are not subject to arbitration, either directly on the purchase agreements or vis-a-vis the CC&Rs as subsequent purchasers, then the homeowners association may decide to again proceed with the claims. But there's one fact that hasn't been discussed here today, and that is this. The Court dismissed our association's counterclaims because it said, in effect, they were putative class members in the Hartman Slaughter case, and that if they wished to become named plaintiffs in that action, they could, but it was, as I just read to the Court, it was their decision. They weren't obligated to do so. They didn't have to do anything. On November 14th, that's next week, the district court, and it's no longer Judge Jones, it's Judge Freudenthal from the Tenth Circuit who's been assigned to the cases now on account of her accusal, which isn't germane to these proceedings. Judge Freudenthal is going to hear the motion for class certification against the product manufacturer, Upinor Corporation, which was responsible for the design and manufacture of these high zinc fittings, which we contend are defective and discharge lead into the water supply, amongst other things. To the extent that Judge Freudenthal elects to certify those claims, this homeowner's association's role may be over with completely, because each of the homeowner members may be covered by that class certification finding, and there may be no need at all for our clients to proceed against the developers here in any way, shape, or form. So I think that magnifies the reason why it would be improper for the Court to exercise mandamus, and it's extraordinary, and the extraordinary nature of that when, in fact, my clients aren't litigants with respect to this issue. They, since these orders were issued, there's been no further efforts to effectuate Chapter 40, because they have, in effect, been sidelined, standing on the sidelines waiting to see what is going to happen. Now, this may not be relevant to our decision. What's happening in the Hartman Slaughter case with respect to Chapter 40? I mean, are they fighting about whether or not that case can go forward absent inspections? Your Honor, I'm not aware of any now-pending disputes over Chapter 40, but I can tell you this case has been going on for a long time, and there have been numerous discussions concerning the interplay between the class action rules and Chapter 40 and the pre-litigation rights that are afforded builders under certain circumstances. But to the extent that's a dispute that's being fought out in the Hartman Slaughter case? That's correct. And, and, and, just to tie that up, to the extent that we were live litigants here, that fight would be appropriate in that case, not this one. This case has no live controversy. There is no judiciable controversy pending before this Court to decide on mandamus relief, because our counterclaims were dismissed. Now, the developers don't like the reason why they were dismissed. It was procedural rather than for the reasons that they state. But the point is, is that there is nothing before this Court. There is no further relief this Court can grant. If you look at the relief that was requested by the Petitioners, they want the counterclaims dismissed, and they have now been dismissed emphatically by, by the district court. The one of the things I noted was counsel's. And you're not appealing that dismissal. We, we, we are not. We are not. Your, your, your clients got dismissed out? Without prejudice, just as they requested. And our clients are presently awaiting the outcome of, amongst other things, the motion for class certification, which will be heard next week, against the product manufacturer. And let me review the betting on this one in terms of your clients. The initial suit brought by the developers was against the Homeowners Association. That is correct. And the counterclaims were brought by the Homeowners Association or by the homeowners themselves? Homeowners Association, in their representative capacity under Nevada law, which authorize, which is essentially a, an assignment, a statutory assignment of the claims to the HOA. And that's, that's. So when you say your clients, what you really mean is the claims of the subset of homeowners. That's correct. I got it. That's correct. So when you say my clients, you don't really mean the homeowners. Your client or clients are the Homeowners Association. Right. And, and vis-a-vis NRS 116-3102 subpart D and a spate of recent Nevada Supreme Court decisions, it is now manifest that the Homeowners Associations have those rights, can assert those rights on behalf of their individual unit owners. And, and that's how these Homeowners Associations elected proceed. But as you can tell, because of the intervening arbitration ruling, because of the potential that the individual homeowners may be afforded full relief in the claims against the product manufacturer as putative class members, there may be no reason for this Homeowners Association to further proceed against these developers in any manner in this case. And again, this may not be strictly relevant, that Slaughter-Hartman case is not brought against these developers. It's only brought against the product manufacturer. No. It is also brought against these builders, but not for the homes that are in these communities. These builders, at least one of them is a defendant, and it's for a subcommunity. But I see. But these, these, the developments at issue in this case. That is correct. These developers are not defendants in the Slaughter-Hartman. That is correct, Your Honor. So then we get to the, you know, the issue here. And assuming that, you know, the Court doesn't believe that this is moot, which we believe, and assuming that the believers are right controversy, which of course we don't believe. The issue then is, does Chapter 40 afford developers or contractors in the State of Nevada an absolute right to inspect? And that, and so we're clear, they are asking you to make that decision in the abstract. And by reference to their moving papers, I would direct the Court's attention to page 15 of the moving papers, where they talk generically about the application of Chapter 40. And in particular, they say, The upshot of this framework is that the developer has an absolute pre-litigation right to inspect and repair every residence with an alleged construction defect regardless of the form of the notice given. And then they later go on, and this is where this is important, is they observe and note the forfeiture that occurs if an inspection is not afforded. They say if the claimants refuse to open their homes to inspection, their suit must be dismissed or stayed. They miss a key point. And that is that the Nevada Supreme Court in a case called D.R. Horton v. Eighth Judicial Court said that it's the district court's duty to make sure that the statute is not used, that a contractor does not utilize the statute as a shield for the purpose of delaying the commencement of repairs or legitimate litigation. In effect, what they're saying is, and this applies with particular force with respect to inspection requirements, is this. If you don't have a demonstrable need for the inspections and you are advocating and trying to vindicate those inspection rights for no good reason other than to potentially cause a forfeiture of the plaintiff's claims, which we believe is exactly what's happening here, then you don't get to exercise those inspection rights. And at the risk of being existentialist here, very few things in life are absolute, Your Honors, and this is one of them. And I want to use as a hypothetical example, because you may have had some exposure in the press, and that is the Chinese drywall situation that occurred in South Florida and some other states where there was contaminated drywall. If you are a builder and you know that you used that drywall in a home, what purpose does it serve to inspect the home? And by adopting this absolute rule, and make no mistake, they discuss it generically because they've offered no support on this record that they can't identify whether or not the homes have the subject fittings, the defective fittings. They talk about it in a hypothetical sense that, well, you know, in other communities that we've looked at, and I'll sum up. The last item I would say, this is a matter of Nevada state law. There have been multiple decisions over the last two years concerning the application and, in particular, the inspection rights and or the notice of inspection rights. We would ask, and we agree with them, that this be certified to the Nevada Supreme Court if this Court's intent to move forward with a ruling on mandates. Thank you, Your Honors. Roberts. Roberts. Now, we took you over time, but would you like one minute to respond? Your Honor, their argument is premised upon the fact that they don't have a counterclaim. That's not the issue. We filed a declaratory relief case seeking certain declarations, including inspection rights. We're entitled to those declarations whether or not they ever file a counterclaim. The fact that their counterclaim was dismissed makes no difference. We still have the right. Makes no difference to what? To our right to have inspections. No, but does that make a difference to, you know, whether you're entitled to pursue the petition for mandatement? I understand that. But their argument is that since they filed, since their counterclaims were dismissed, there's nothing to be adjudicated. And that's not right. That's not right, because we're entitled to the inspections before they file suit. And, in fact, we filed the declaratory relief action before they filed a complaint and their cross-claim, rather. And their cross-claims make no difference and don't matter. But they've been dismissed, and at the moment there is no order to which you are actually objecting? We're objecting to the district court's statements in orders in which it said what it was going to do. Yep. Got it. And I understand. Thank you very much. Thank you. Let me make sure I get the numbers right. Greystone number 13-70546 is now submitted for decision.
judges: Tashima, Fletcher, Nguyen